UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

```
-------------------------------------------------x
                                                 :
In re                                            :    Chapter 11
                                                 :
STEPHEN RANDALL GRIEBE                           :    Case No. 14-05066-jw
                                                 :
                                                 :
                        Debtor.                  :
                                                 :
-------------------------------------------------x
```

**OBJECTION OF THE UNITED STATES TRUSTEE
TO DISCLOSURE STATEMENT**

The United States Trustee (the UST) objects to the debtor's disclosure statement filed on January 5, 2015 (the "Disclosure Statement"). ECF Doc. No. 49. This objection is filed pursuant to 28 U.S.C. § 586 and 11 U.S.C. § 307. In support of her objection, the UST alleges as follows:

**I.  FACTUAL BACKGROUND**

On September 8, 2014, Stephen Randall Griebe (the "Debtor") filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. Shortly thereafter, the Debtor retained the services of Nathan Davis and realized he did not qualify for a Chapter 13 because of his debt threshold; accordingly, the case was converted to Chapter 11 on November 3, 2014.

Presently, the Debtor is authorized to manage his property as debtor-in-possession pursuant to §§ 1107(a) and 1008 of the Bankruptcy Code. No trustee or examiner has been appointed in this Chapter 11 case. No creditors committee has been appointed as there was insufficient interest for the UST to appoint one.

The Debtor is currently in the middle of a bankruptcy divorce; and the bankruptcy case was filed on the eve of a trial scheduled in the family court to, among other things, decide the division of the marital assets.

The Debtor's schedules list (a) four pieces of real estate with a total estimated value of $894,325.00; (b) personal property with an estimated value of $52,902.00, consisting of, among other things, a 50% interest in Greco Development, LLC, and 100% interest in Metro Contracting, Inc., which is now defunct, (c) secured debt with a total value of $2,978,909; (e) debt owed to the Internal Revenue Service ("IRS") of $300,000, and (f) unsecured debt of $250,500.[1]

## II. ARGUMENT

Under § 1125(b) of the Bankruptcy Code, a disclosure statement must contain "adequate information" before the debtor may solicit acceptance of a plan of reorganization. Adequate information is defined as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical reasonable investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

A disclosure statement is intended to be the primary source of information from which creditors and shareholders can reach an informed decision as to whether to support or reject a plan of reorganization. See In re Ferguson, 474 B.R. 466, 471 (Bankr. D.S.C. 2012) (quoting In re Point Wylie Co., 78 B.R. 453, 460 n. 6 (Bankr. D.S.C. 1987) ("[T]he

---

[1]   Amended Schedule F erroneously lists the unsecured debt as totaling $319,800.00.

preparing and filing of a disclosure statement is the most important step in the reorganization of a Chapter 11 debtor. It is relied on by both the creditors of the debtor before they vote on the plan of reorganization, and by the bankruptcy court before approving it. Given this reliance, it is crucial that a debtor be absolutely truthful so that the disclosure statement meets the Code standard in §1125."); In re Forest Grove, LLC, 448 B.R. 729, 735-36 (Bankr. D.S.C. 2011) (holding that disclosure statement of Chapter 11 debtor limited liability company did not provide adequate information regarding debtor's future income where debtor's treatment of potential sources of income was speculative at best, success of debtor's case was contingent on personal contributions by trustee for trust that was debtor's sole member, and disclosure statement did not provide information about trustee's financial situation showing his ability to make such contributions).

In this case, the Disclosure Statement is highly deficient and fails to provide "adequate information" as that term is defined in § 1125(a)(1). From reading the Disclosure Statement it is very difficult to decipher what creditors will recover, the timing of such recovery, and the overall feasibility of the proposed plan. Moreover, as proposed, the Plan is blatantly unconfirmable. Most notably, the following areas are found to be deficient in their disclosure:

**1.** **Family Court Issues**. It appears from the Disclosure Statement that the Debtor is not asking the Bankruptcy Court to rule on the division of the marital assets. However, what is not clear from the Disclosure Statement is (a) the events that transpired pre-petition in both district court and family court which led to the filing of this bankruptcy case; (b) when the Debtor proposes to have the Family Court determine the

separation of the assets; and (c) how any decision of the Family Court would impact the feasibility of the Plan and recovery by the creditors.

    **2.**     **Analysis of Potential Preferential or Otherwise Voidable Transfers**: The Disclosure Statement does not address whether an analysis has been completed with respect to any potential preferential or otherwise voidable transfers. The Disclosure Statement simply states that "[i]t is anticipated that the value of the actual or anticipated recovery from preferential or voidable transfers is in excess of $250,000." See Disclosure Statement at p. 3. Moreover, the Disclosure Statement states that the Debtor transferred to his wife for no consideration his interest in the marital home and that the transfer was made at a time when debtor knew or should have known that he was insolvent. Additional information should be provided regarding (a) what analysis has been done for potential preferential or voidable transfers, (b) how the Debtor arrives at the $250,000 as an anticipated recovery for any such possible litigation, and (c) how any funds received from any such litigation would be distributed to creditors.

    **3.**     **Tax Issues:** The Disclosure Statement provides that the IRS has a lien on all assets in the amount of $249,925.44. However, on December 8, 2014 the IRS filed a proof of claim for $340,791.92, asserting a priority claim in the amount of $249,925.44 and an unsecured claim in the amount of $90,866.48. Moreover, the Proof of Claim reflects that the priority portion for the 2012 taxes was solely an estimate as no return was filed. Nowhere in the proof of claim, however, does the IRS claim to have a lien on any of the Debtor's assets. Accordingly, the Debtor should disclose how the recently filed returns would impact the amount of the IRS claim, and how the unsecured portion of the IRS claim would be treated.

Lastly, because the distributions under the plan are contingent on the liquidation of the Debtor's real estate, the Disclosure Statement should be amended to provide information regarding (i) the tax consequences from the sale of the real estate and (ii) the impact of those costs on the expected recovery to creditors.

4. **Description and Value of Assets:** In Section I-C – "Assets and Liabilities," the Debtor estimates the value of his interest in Metro Contacting, Inc. and Grieco Development, LLC at $0.00; the value of his real estate at $894,325; the value of his personal property at $40,001; and finally the amount of his liabilities at $2,978,109.15. The Disclosure Statement, however, should be amended to provided corrected figures and additional information as to the value of the assets. Among other things, the Debtor should provide additional information regarding:

   a. Why Grieco Development, LLC has a value of $0.00 when it purportedly owns an assets worth about $145,000 with a $125,000 lien.

   b. The assets that Metro Contracting, Inc. – which is now defunct – still has in its name which, according to the Rule 2015.3 report have an estimated value of $33,450.00.

   c. Why the personal property is described as having a value of approximately $40,000 when the schedules estimated the value at $52,902.

   d. All liabilities that the Debtor has, and not just the secured liabilities.

5. **Sale of Real Estate Under the Plan**: While the Disclosure Statement and plan contemplate the sale of the Debtor's real estate, there is no discussion on the proposed procedures and timing for the sale. Moreover, to date, the Debtor has yet to employ any real estate broker to help with any such sale.

6. **Estimate of Administrative Expenses**: The Disclosure Statement and Plan provide that any administrative expenses will be paid on the Effective Date of the plan, unless they are unknown. However, no information is provided on an estimate for such epxenses. Moreover, it is not clear whether Mr. Davis is holding any funds from the retainer paid into his trust fund. His retention application provided that he was paid $6,500 on September 15, 2014 and, after deducting for pre-conversion fees and costs, he indicated he was holding $4,009 in his trust account. However, on December 15, 2014, Mr. Davis filed an amended Rule 2016(b) statement which only discloses "*tbd*" for the amounts of fees paid. Accordingly, Mr. Davis should be required to file an amended Rule $2016^2$ and also amend the Disclosure Statement to provide additional information as to the estimated administrative claims.

7. **Treatment of Creditors Under the Plan.** The Disclosure Statement and Plan propose to (i) pay the IRS debt "upon the sale of real estate owned by the Debtor," (ii) sell the real estate and pay off the lien holders, (iii) value the claim of The Guarantee Company of North America USA at $2,000 and pay it at $50 per month and pay the remainder unsecured portion 1% – or $19,000 – over the life of the plan; and (iv) pay the rest of the unsecured creditors which total $111,066.48, 1% of their claim. The Disclosure Statement, however, fails to address, (a) from which funds the IRS debt will be paid and over how long; (b) how The Guarantee Company of North America USA's claim could be valued at $2,000; (d) where the Debtor arrives at the $19,000 and $111,066.48 figures from for the unsecured portion of The Guarantee Company claim

---

[2] On December 17, 2014, the UST's Office brought the discrepancy from the retention application to the Rule 2016 statement to Mr. Davis's attention, but to date no amendment has been filed.

6

and all other unsecured claims, respectively; (e) how long the life of the Plan will be, and (f) when the Effective Date is proposed to occur.

8. **Dischargeability Under the Plan**:  Neither the Disclosure Statement nor Plan address what the Debtor proposes in terms of dischargeability of his debts and neither provide an explanation as to how the Plan conforms with the requirements of § 1141(d)(5) for individual debtors.  Accordingly, the Disclosure Statement and Plan should be amended to address the requirements of the Bankruptcy Code for individual debtors and amend the language as set forth below, or similar language:

> *Discharge*. Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code and Local Bankruptcy Rule 4004-1. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

9. **Requirements of 11 U.S.C. § 1129(a)(15) and Feasibility:** Because the Debtor is an individual, the Disclosure Statement should disclose the requirements of §1129(a)(15) in the event an unsecured creditor objects to the confirmation of the debtor's plan.

> Under section 1129(a)(15), if the creditors do not receive the value of their claim pursuant to the proposed terms, then the debtor has to prove that "the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the first day the payment is due under the plan."

The Plan proposes plan payments in the amount of $342.92 from funds to be earned from his employment "and/or additional funds Debtor hopes to make . . . from additional consulting work." See Plan at p. 3.  It is not clear, however, whether those payments are yearly or monthly, and when those payments would start.  The Disclosure Statement

7

should provide additional disclosures as to what "additional funds" the Debtor expects to receive in the future and how the Debtor arrives at a plan payment of $342.92 when Schedule J reflects a <u>negative</u> monthly net income of $2,841.60[3] and the first monthly operating report filed with the Court reflects a <u>negative</u> monthly cash flow of $1,979.53.

**10.   Information to Be Provided to the United States Trustee**: At the 341 meeting, it became clear that there were various deficiencies in the schedules, statements of financial affairs, or information provided to the United States Trustee.  To date, some items requested by the UST remain outstanding, among which are the following:

> a. The Debtor has yet to provide insurance reports for the vehicles he claims to own;
>
> b. The Debtor has failed to provide an explanation of why the prepetition bank statements reflect various transfers to a savings account, and information as to whether the savings account is in the Debtor's name;
>
> c. The Debtor has failed to provide information regarding whether the Debtor has any ownership interest in a company named A&S Inc., which is reflected in his 2011 tax returns as being a source of the Debtor's income for that year.

Accordingly, the UST requests that the above-referenced information be provided to the UST's Office and an explanation addressing these issues also disclosed in an addendum to the Disclosure Statement.

---

[3]   The UST has previously requested that the Debtor's Schedule I and J be amended to reflect the correct monthly income, which, based on the paystubs provided to the UST, is closer to $6,000 a month, and also deduct the childcare expense in Schedule J of $200 and the double $2,000 alimony which, as the Debtor testified at the 341 meeting of creditors, were entered in error.  Accordingly, the Disclosure Statement should be amended to provide a clearer picture of the income and expense of the Debtor and projections going forward during the life of the plan.

For the foregoing reasons, the UST asks the Court to consider her objections and to deny approval of the Disclosure Statement and/or confirmation unless the above matters are adequately addressed.

        Respectfully submitted,

        JUDY A. ROBBINS
        United States Trustee, Region 4
        By: /s/ Elisabetta G. Gasparini
        Elisabetta G. Gasparini
        Trial Attorney, District Court Id. No. 11548
        Office of the United States Trustee
        1835 Assembly St., Suite 953
        Columbia, South Carolina 29201
        (803) 765-5227
        (803) 765-5260 (facsimile)
        elisabetta.g.gasparini@usdoj.gov

1-14-2015

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on January 14, 2015, I served the below-named parties with copies of the following documents:

**OBJECTION OF THE UNITED STATES TRUSTEE TO DISCLOSURE STATEMENT**

**WITH**

D. Nathan Davis
Davis Law
12 Carriage Lane, Suite A
Charleston, SC 29407

Stephan Robert Griebe
103 New Hope Drive
Summerville, SC 29483

## CERTIFICATE OF SERVICE

by mailing said copies to them by first-class, United States mail, postage prepaid, with return address clearly shown to said parties at the addresses shown below:

By: /s/ Elisabetta G. Gasparini
Elisabetta G. Gasparini
Trial Attorney, District Court Id. No. 11548
Office of the United States Trustee
1835 Assembly St., Suite 953
Columbia, South Carolina 29201
(803) 765-5227
elisabetta.g.gasparini@usdoj.gov